**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **GUADALUPE RAMIREZ-AGUILERA** | § | |
| | § | |
| **v.** | § | **A-13-CV-1024-LY** |
| | § | **(A-13-CR-132(1)-LY)** |
| **UNITED STATES OF AMERICA** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court are Guadalupe Ramirez-Aguilera's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 (Dkt. No. 93); the Government's Response to the Motion (Dkt. No. 98); Ramirez-Aguilera's Reply (Dkt. No. 104); and Ramirez-Aguilera's "Motion Submitted by Defendant in forma Pro-Se to Reconsider the Whole Case and the Reduction of Two Levels Under the Amendment 782" (Dkt. No. 141). The undersigned Magistrate Judge submits this Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1 of Appendix C of the Local Rules.

## I. GENERAL BACKGROUND

On August 21, 2013, Guadalupe Ramirez-Aguilera pled guilty to possession with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). On October 31, 2013, the District Court sentenced Ramirez to 84 months of imprisonment, followed by four years of supervised release. Dkt. No. 67. On November 13, 2013, Ramirez send a letter to the clerk of court stating: "I would like to get a second chance with another court-appointed attorney . . . . I appreciate with all my heart if you could send me the appropriate form to file. The Appeal or 2255 or Habeas

Corpus." Dkt. No. 69.  After considerable discussion on how to docket the letter, the Clerk's Office sent forms for both a Notice of Appeal and a Motion to Vacate under Section 2255.  Ramirez filed the instant Motion to Vacate.  After holding an evidentiary hearing on August 25-26, 2015, the undersigned submitted a Report and Recommendation recommending that the original letter should have been docketed as a notice of appeal.  The District Court agreed, and re-instated the letter as a timely notice of appeal.  The remainder of the Motion to Vacate was held in abeyance.  Counsel was appointed for the appeal, and that attorney filed an *Anders* Brief.  The Fifth Circuit concurred, and dismissed the appeal as frivolous.  Dkt. No. 140.  Ramirez then filed a request for the "whole case" to be reconsidered, which he combined with yet another request (he has made at least three previously) for relief based on Amendment 782 to the U.S. Sentencing Guidelines. Dkt. No. 141. The District Court thus lifted the stay over Ramirez's Motion to Vacate, and referred that, along with the related request for a sentence reduction under Amendment 782, back to the undersigned.

## II. MOTION TO VACATE

Ramirez bases his motion to vacate on three claims that his attorney failed to provide him effective assistance of counsel.  Specifically, he contends that his trial attorney: (1) failed to appeal; (2) failed to object to his pre-sentence investigation report; and (3) failed to stipulate to a favorable plea agreement and to prepare adequately for trial.

### A.    Standard of Review

Under § 2255, four general grounds exist upon which a defendant may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the District Court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; and (4) the sentence is

otherwise subject to collateral attack. 28 U.S.C. § 2255. The nature of a collateral challenge under § 2255 is extremely limited: "A defendant can challenge his conviction after is it presumed final only on issues of constitutional or jurisdictional magnitude . . . and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). If the error is not of constitutional or jurisdictional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, "result in a complete miscarriage of justice." *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994). A defendant's claim of ineffective assistance of counsel gives rise to a constitutional issue and is cognizable pursuant to § 2255. *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1996). Finally, a defendant may waive his statutory right to file a § 2255 motion, if the waiver is knowing and voluntary. *United States v. McKinney*, 406 F.3d 744, 746 (2005).

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonableness. *Id.* A court's review of counsel's performance must be highly deferential, with a strong presumption that the performance was reasonable. *Id.* at 689; *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir. 1998). A court will not find ineffective assistance of counsel merely because it disagrees with counsel's trial strategy. *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999). Moreover, "[a] fair assessment of attorney performance requires every effort to be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

To demonstrate the prejudice prong, a petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane*, 178 F.3d at 312.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.  "However, the mere possibility of a different outcome is not sufficient to prevail on the prejudice prong. Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Crane*, 178 F.3d at 312-313 (quoting *Ransom v. Johnson*, 126 F.3d 716, 721 (5th Cir. 1997)).  This same two-part standard applies to ineffective assistance of counsel claims arising out of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).  Therefore, the movant has the burden of proof and of persuasion to establish that a reasonable probability exists that but for his counsel's ineffectiveness, he "would not have pleaded guilty and would have insisted on going to trial." *Czere v. Butler*, 833 F.2d 59, 63 (5th Cir. 1987) (quoting *Uresti v. Lynaugh*, 821 F.2d 1099, 1101 (5th Cir. 1987)).

**B.     Failure to Appeal**

Ramirez argued that he requested his attorney to appeal, but his attorney failed to do so. While ordinarily this would be grounds for relief, this issue is now moot as a result of Judge Yeakel's order in October 2015, reinstating Ramirez's direct appeal.  Dkt. No. 132.  As noted, that appeal proceeded, and resulted in a dismissal of the appeal as groundless.  Dkt. No. 140.  Since the only relief available to a petitioner claiming that their attorney failed to file an appeal is permitting the defendant to file an out of time appeal, *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000), and Ramirez has now been permitted an out of time appeal, this argument is moot.

**C.      Failure to Object to Defendant's Pre-Sentence Report**

Ramirez contends that his counsel was ineffective in not making certain objections to his pre-sentence investigation report (PSI).  First, Ramirez asserts that his attorney should have objected to the quantity and purity of the methamphetamine at issue in his offense.  He does not seem to object to the quantity of drugs found on his person, but rather argues that the quantity does not support the guideline range he was given.  He argues that though he was charged under the statute for a "mixture containing" methamphetamine, he was given a base level consistent with pure methamphetamine or "Ice."  Ramierez is mistaken.  The record reflects that the methamphetamine for which he was held accountable (218.57 grams) was 93% pure.  Dkt. No. 79 at 4, ¶ 8.  In calculating the base offense level, this was converted to the equivalent quantity of 100% pure methamphetamine, or 203.27 grams.  *Id.* at 5, ¶ 12.  That quantity correlated with a base offense level of 34, which is the base offense level used in the PSI.  Thus, there was nothing on this point for the defense counsel object to.  Ramirez pled guilty to violating 21 U.S.C. § 841(a)(1) and (b)(1)(B), which criminalizes possession with intent to distribute "50 grams or more of a mixture or substance containing a detectable amount of methamphetamine."  This encompasses methamphetamine in all forms, including Ice.  To the extent this argument is based on the assertion that § 841(b)(1)(B) does not encompass "actual methamphetamine" or "ice," this is clearly incorrect, and his argument is meritless.

Second, Ramirez argues that his counsel should have objected to his degree of responsibility.  This argument is also meritless.  Ramierez's attorney did in fact object on this basis, and requested that Ramirez receive an adjustment for a mitigating role under U.S.S.G. § 3B1.2(a) or (b). Dkt. No.

65-1.  He further raised the argument at the sentencing hearing.  Dkt. No. 97 at 4- 6.  The district judge overruled the objection.  *Id.* at 8.

Lastly, Ramirez contends that his attorney should have requested he receive the benefit of the "safety valve."  The "safety valve" is another name for 18 U.S.C. § 3553(f), which directs a District Judge to sentence a defendant without regard to an applicable statutory mandatory minimum if the defendant meets the qualifications set out in that subsection.  If a defendant meets the qualifications of the statute, he is also entitled to a two level decrease under the sentencing guidelines.  U.S.S.G. § 2D1.1(b)(17) (formerly (b)(16)).  Because there was a five-year mandatory minimum sentence applicable to Ramirez's offense, the safety valve has theoretical applicability to his case.  But for several reasons it has no practical application.  First, and most importantly, one of the requirements for safety valve treatment is that the defendant "has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses." 18 U.S.C. § 3553(f)(5).  It is undisputed here that Ramirez declined to cooperate with the government and provide it any information.  *See, e.g.* Dkt. No. 97 at 9.  Even had he done so, the statute still requires the court to sentence the defendant "pursuant to guidelines promulgated by the United States Sentencing Commission."  18 U.S.C. § 3553(f). Ramirez's guideline range, after all adjustments, was 108-135 months, well over the 60 month statutory minimum.  Dkt. No. 97 at 10. So removal of the mandatory minimum from the analysis would not have benefitted Ramirez. Finally, the two-level adjustment—even had Ramirez been entitled to it—would also have been irrelevant.  Ramirez's final adjusted offense level was 31, so a two-level reduction would have meant an offense level of 29.   Combined with a criminal history category of I, that results in a

recommended range of imprisonment of 87-108 months, still higher than the 84 month sentence Judge Yeakel imposed.  In sum, this argument has no merit.

**D.      Failure to Obtain a Favorable Plea Agreement and Prepare Adequately for Trial**

Lastly, Ramirez argues that his attorney failed to stipulate to a favorable plea agreement and to prepare adequately for the plea and sentencing.  There is no support for this claim in the record.  First, Ramirez *did* receive a plea agreement from the government.  Second, whether a plea agreement is entered into is a two-party decision, and the defense attorney cannot force the government to offer a defendant any particular deal.  Finally, the record reflects that defense counsel was well-prepared for both the plea proceeding, and the sentencing hearing. He made timely objections to the PSI, advocated well for Ramirez at sentencing, and demonstrated preparation at both, all of which resulted in Ramirez receiving a sentence that was two years shorter than the lower end of the applicable guideline range.

In his memorandum in support of his motion, it appears that Ramirez also contends that his attorney promised him that he would receive the mandatory minimum sentence of 60 months imprisonment.  This claim is not credible.  First, "the representations of the defendant . . . at [a plea] hearing, as well as any finding made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  Thus, the courts have held that a defendant who swears to one thing at a guilty plea hearing, and then later claims the opposite, will be considered "wholly incredible" if all he makes are "conclusory allegations unsupported by specifics."  *Id.* at 74.   That barrier, "although imposing, is not insurmountable." *Id.*  Thus, if a defendant contends he was promised something, and further alleges "exactly what the terms of the promiser were; when, where, and by whom the promise had been

made; and the identity of one witness to its communication," then such a claim is subject to further investigation. *Id.* at 75-76. *See also Flores v. Estelle*, 578 F.2d 80, 84 (5th Cir. 1978) ("a defendant's denial in entering a guilty plea that undisclosed promises or inducements have been made to him does not foreclose further inquiry into the truthfulness of these recitals" when the *Allison* elements are pled).

> At his guilty plea, the following discussion took place:
>
> COURT:    Has anybody promised you a benefit that's not set out in your plea agreement to encourage you to plead guilty today?
>
> RAMIREZ:    No.
>
> COURT:    Has anybody promised or guaranteed what your sentence will be to encourage you to plead guilty today?
>
> RAMIREZ:    No.

Dkt. No. 96 at 24-25. Thus, Ramirez's claim that his attorney promised him a sentence of five years imprisonment to induce him to plead guilty is diametrically opposed to his sworn statements at his guilty plea. Moreover, Judge Lane also admonished Ramirez that anything Ramirez's attorney may have told him about the guidelines or a possible sentence was only an estimate and was not binding, and that Ramirez "simply [did] not know what [his] sentence will be before [he] enter[ed his] plea." Ramirez testified that he understood this. *Id.* at 21-22. All of these statements at the plea hearing mean that Ramirez cannot now be heard to contend the opposite, absent detailed, specific, witnessed statements to support that claim. *Allison*, 431 U.S. at 74. Ramirez's seven pages of conclusory statements in his memorandum do not overcome that barrier. He fails to state any specific facts as to the time, place, or even contents of the alleged promise made by his attorney. Dkt. No. 93-1 at 31-39. Instead, Ramirez contends either that his attorney promised him his sentence would be 46-57

8

months and lied about the contents of the plea agreement (Dkt. No. 93-1 at 32), or alternatively that he and his attorney had no discussions "as to how to approach either the plea agreement or th [sic] sentencing phase of the case." Dkt. No. 93-1 at 30.   Ramirez provided no other details to support his allegation.  This claim, therefore, is subject to summary dismissal.

While an evidentiary hearing on this issue was not required, as noted at the outset, the Court held a hearing on other issues, and at that hearing the Court permitted evidence on this argument. At the hearing, both Ramirez and his trial counsel—Assistant Federal Public Defender Horatio Aldredge—testified.  Ramirez persisted in stating that Aldredge had told him that he would receive the statutory minimum (five years), and very likely would be given less.  He also contended that he did not understand the plea agreement, and was merely told to sign it.  When asked about his statements at the plea hearing, Ramirez argued that he thought there was an agreement with the sentencing judge that he would only get five years.  While Ramirez did admit that Aldredge told him of the different sentencing possibilities, he continued to insist that Aldredge had informed him that he would receive the statutory minimum.

Aldredge, on the other hand, testified that though he did inform Ramirez of the statutory minimum and the different possibilities under the guidelines, he did not at any time promise Ramirez that he would receive that amount.  Further, Aldredge stated that he believed Ramirez received a very favorable sentence, especially considering what the guideline range was.  Aldredge did note that Ramirez repeatedly asked about the opportunities for a lower sentence and it was clear he desperately hoped for something below the guidelines.  He also agreed that there was never any chance of Ramirez receiving the benefit of the safety valve, as Ramirez was unwilling to cooperate, and

insisted that the transaction that led to his arrest was the only drug transaction he had ever been part of.

Considering all of this testimony, the Court finds Ramirez's claim that he was promised a sentence of five years to be totally lacking in credibility. Prior to the evidentiary hearing, the Court entertained the possibility that Ramirez may have misunderstood the interaction of the statutory minimum, the guidelines, and his attorney's discussion of the varying possibilities. But after hearing the testimony, the Court concludes that Ramirez understood all of this, but simply does not believe that he deserved a sentence of 84 months of imprisonment for what he did, and is making whatever claims or statements he needs to make in pursuit of a lower sentence. There is no other plausible explanation, given Ramirez's statements in court, the terms of the plea agreement, and the overwhelming evidence that he was admonished by all concerned that he was facing a sentence more than five years in length. Thus, even if Ramirez had been entitled to a hearing on this issue—which he was not—his testimony was not credible and the evidence does not support his claim.

### III. MOTION FOR RECONSIDERATION

Ramirez additionally requests that the court reconsider his entire case and sentence on two main grounds. The first is that the pre-sentence investigation report classified his base level incorrectly based on the purity of the methamphetamine. The second ground is that he should be entitled to a reduction pursuant to Amendment 782 of the guidelines. Neither is grounds for reconsideration.

First, Ramirez contends that he was given an incorrect base level because he pled guilty to a statute that included only a mixture of methamphetamine, not actual methamphetamine or ice. As

discussed previously, Ramirez pled guilty to a statute that would encompass all three.  Therefore, his argument is meritless.

Second, Ramirez argues that he is entitled to a reduction to his sentence pursuant to Amendment 782.  Judge Yeakel has rejected this request on three previous occasions.  As noted previously, Ramirez is ineligible for a reduction under Amendment 782 because he was given a sentence of 84 months.  Amendment 782 reduces a defendant's offense level by two levels.  As the Court noted earlier in its discussion of the safety valve, Ramirez's guideline range with a two level reduction would have been 87-108 months.  Because Ramirez was given a sentence below even that reduced guideline range, he is not eligible for a reduction under Amendment 782.  Therefore, both of Ramirez's arguments for reconsideration should be denied.

## IV. RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that Movant Guadalupe Ramirez-Aguilera's Motion to Vacate, Set Aside, or Correct his Sentence, pursuant to 28 U.S.C. § 2255 and Motion for Reconsideration be **DENIED**.

## V. WARNING

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and

recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

## VI. CERTIFICATE OF APPEAL

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "[u]nless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, effective as amended to February 1, 2010, the District Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability ("COA") may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595 (2000). In cases where a district court rejected a movant's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner

shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the denial of the movant's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Accordingly, a certificate of appealability shall not be issued.

SIGNED this 9th day of December, 2016.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE